C. M. KIMBRO, Appellee, v. JAMES I. MOLES, Appellant.

**NEGLIGENCE:** Contributory Negligence—Automobile Accident—
1 **Evidence—Sufficiency.** Evidence reviewed, in an action by plaintiff for personal injuries suffered in an automobile accident, and *held* to present such conflict as to preclude a directed verdict on the ground that plaintiff was guilty of contributory negligence.

**APPEAL AND ERROR:** Harmless Error—Abstract Instructions.
2 Giving an instruction, incorrect as an abstract proposition of law, but pertinent to the evidence in the case on trial, is not necessarily reversible error. So *held* in an automobile accident, where the court told the jury that it was the duty of the defendant to stop his car on signal to do so, without any qualifying statement as to the presence of danger.

**TRIAL:** Reception of Evidence—Order of Proof—Discretion of Court.
3 Testimony which is admissible, for any reason, on rebuttal is not rendered inadmissible because it might have been received on the main case.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

FRIDAY, APRIL 7, 1916.      .

ACTION for personal injuries sustained by the plaintiff as a result of an automobile collision, the plaintiff having been struck and run over by defendant's automobile. There was

a trial to a jury and a judgment for plaintiff on the verdict. The defendant appeals.—*Affirmed.*

*Voris & Haas,* for appellant.

*Rickel & Dennis,* for appellee.

EVANS, C. J.—I. At the close of the evidence, the defendant moved for a directed verdict, on the ground that the plaintiff had failed to show herself free from contributory negligence. This motion was overruled by the

1. NEGLIGENCE: contributory negligence: automobile accident: evidence: sufficiency.

court. The point was again urged in the lower court by a motion for a new trial and was again overruled. The weight of appellant's argument herein is directed largely to this contention. The accident occurred on August 15, 1913, at about five o'clock P. M. It occurred upon the highway in the presence of many eyewitnesses. These, however, do not agree in their testimony as to many details thereof. The place of the accident was on a north and south highway on the southern slope of a sandy hill. Prior to the appearance of the defendant on the scene, a mishap had occurred on this hill which resulted in the assembling of 8 or 10 persons and 3 automobiles thereon. The 3 automobiles were owned respectively by Briney, Green and Ingersoll. The traveled part of the road was very narrow. The width of the road from fence to fence was 40 feet. A few feet inside the fence on each side of the highway were shallow ditches. Between these there was a crown of traveled track. This traveled track contained two ruts, or wheel tracks. Briney, going up hill in a northerly direction, and Green going down hill in a southerly direction, met and passed each other on this hill. Briney, however, was thereby crowded into the ditch on the east side of the road and became "stuck" therein. Green stopped near the foot of the hill and came back to his aid. At about the same time, Ingersoll came over the hill from the north and stopped also to

render aid. Mrs. Kimbro was riding with Green. Briney had passengers, consisting of women and children. While the men were trying to extricate Briney's automobile from the ditch on the east side, the woman and children took a position on the west side of the highway. Green had turned about his automobile and brought it up to a position in front of Briney's with a view of pulling the Briney car out of the ditch. The left front wheel of Green's car either occupied the east wheel track of the traveled road or was very close to it. Ingersoll had driven his automobile to the foot of the hill on the west side of the road and had stopped it there, preparatory to going back to the aid of Briney. At this juncture, the defendant, Moles, appeared in his automobile, coming from the south. He undertook to drive up the hill between the automobiles on the east side of the road and the women and children on the west side of the road, with the result that his automobile ran over the plaintiff, Mrs. Kimbro. The testimony on behalf of the plaintiff was to the effect that Moles was driving at a speed of 25 or 30 miles an hour; that he was signaled by Ingersoll at the foot of the hill to stop; that he did not slow down, but went up the hill without slacking his speed; that, as he approached the automobiles on the side of the hill, he swerved his car to the west in a northwesterly course and in the direction where the women and children were standing, and that he thereby ran over the plaintiff.

On the other hand, the testimony on behalf of the defendant was that he saw the gathering on the hillside before he approached the foot of the hill; that he did slow down; that he changed to low gear; that he went up the hill at the rate of 6 or 8 miles an hour; that he held to the beaten track; that, as he came between the automobiles and the standing women and children, the plaintiff, for some unaccountable reason, rushed across the road in front of his car; that she was so close to him that he did not have time to stop.

Concededly, the defendant's automobile, after striking the plaintiff, ran in a northwesterly direction across the west side

ditch and into the fence. This is accounted for by the defend-
ant by the fact that he became unnerved by the accident and
momentarily lost control of his car thereafter. As to the dif-
fering details of the accident herein indicated, the evidence is
in irreconcilable conflict, the record containing the testimony
of twelve witnesses. Of these twelve, six appear to have been
disinterested, three of them testifying for the plaintiff and
three for the defendant. The testimony, however, of all the
witnesses, both interested and disinterested, appears candid.

The argument of appellant at this point deals with the
relative weight of the testimony and the corroborating prob-
abilities. Accepting, however, the version of the accident as
detailed by plaintiff's witnesses, there can be little ground for
the claim that the defendant was entitled to a directed verdict.
The conflict of evidence clearly presented a question for the
jury, and the trial court properly refused to direct a verdict.
It would be useless for us to enter into any argument as to
the weight of the testimony, pro and con. Each story has its
corroborating circumstances which lend support to plausible
argument on either side, so far as the facts are concerned.

II. The defendant complains of one of the instructions
of the trial court, known as No. 10. This instruction charged
the jury that it was the duty of the defendant, if he saw the
signals referred to in the testimony, or saw the
plaintiff in a dangerous position in front of
his car, to slow down and stop his car. The
plaintiff had testified that, just before the
collision, she had signaled to the defendant to stop, as he was
approaching her. Ingersoll also had testified that he was at the
foot of the hill 150 feet away, and had signaled the defendant
to stop. The point that appellant makes against the instruc-
tion is that the defendant was under no duty to stop upon a
mere signal to stop, unless an apparent danger presented itself,
and that it was, therefore, error in the trial court to instruct
that a mere failure to obey the signal was negligence.

As an abstract proposition of law, the instruction is fairly

2. APPEAL AND
ERROR: harm-
less error: ab-
stract instruc-
tions.

subject to criticism at this point, and we do not approve of it as such. In its application, however, to the concrete case before us, it was quite pertinent to the evidence and we see no possible prejudice which could result therefrom to the defendant. If the jury found with the plaintiff that the signals were given, they must necessarily have found also that the apparent danger was present. If they did not find that the signals were given, then the instruction at this point would be entirely harmless to the defendant.

It appears from the testimony of the defendant's witnesses who, after the accident, examined the track left by defendant's car, that the car began to turn northwesterly at a point about 15 feet south of Briney's car, whereas the collision occurred at a considerable distance further north and about opposite the north end of Green's car. Furthermore, the real defense of fact under the evidence was that the plaintiff herself, suddenly and without warning, ran in front of the defendant's car, and was, therefore, guilty of contributory negligence. If the jury had found such to be the fact, then, under the instruction of the court, they must have defeated the plaintiff. The jury, therefore, necessarily found that the plaintiff did not so expose herself. Upon that view of the evidence, her apparent danger conclusively appeared at the time of the alleged signals. We think it clear, therefore, that the defendant suffered no prejudice from Instruction 10, even though it was technically erroneous at this point.

III. The plaintiff introduced certain testimony in rebuttal, to the effect that an automobile going up a sandy hill, such as described in the evidence, upon low gear at 6 or 8 miles to the hour, could be stopped almost instantly, and within a space of from 1 to 4 feet. This testimony was received, over appropriate objections by the defendant. Error is now assigned upon the admission of such testimony. The complaint is that it was an effort to establish a liability on the doctrine of last clear chance, and should have been introduced, if at

3. TRIAL: reception of evidence: order of proof: discretion of court.

all, as a part of plaintiff's main case. It is also urged that the pleadings did not justify the establishment of liability on such ground. So far as. the order of testimony is concerned, the discretion of the trial court was broad enough to permit the introduction of the evidence in rebuttal, even though it was properly a part of the main case.

As to whether defendant was liable upon the doctrine of last clear chance or not, it is sufficient to say that the plaintiff has not urged liability upon that ground. While the evidence received might have lent support to such a claim, it was also admissible on quite other grounds. The testimony in the main case on the part of plaintiff showed that, after the collision, the defendant's car had sped on for a distance of nearly 75 feet to the westerly side of the road. This circumstance tended to corroborate the plaintiff's testimony that defendant was traveling at a high rate of speed. The defendant testified to a very low rate of speed and a good control of his car on low gear. He also testified that, when he saw the plaintiff in front of his car, he stopped as quickly as he could, or at least that he was unable to stop sooner than he did. The later showing for the plaintiff, that his car could have been stopped within from 1 to 4 feet, if going on low gear at the rate testified to by defendant, tended to show improbability in his testimony in that regard. In other words, it tended to show that he must have been going faster than he testified.

We think there was no error in admitting the rebuttal testimony. The defendant appears to have had a fair trial. Considering the injuries of the plaintiff, the verdict of $600 was very considerate. The judgment below must, therefore, be—*Affirmed.*

LADD, GAYNOR and SALINGER, JJ., concur.