A. J. YOUNKIN, Appellee, v. OLIVE YETTER et al., Appellants.

**HIGHWAYS:** Law of Road—Failure to Pass Beyond Intersection. Jury
1  findings, on the issue of negligence in an automobile accident, on
conflicting evidence, are conclusive on appeal, especially when the
jury might have found that the proximate cause of the collision
was defendant's failure to pass beyond the center of an intersec-
tion before turning.

**EVIDENCE:** Competency—"Similar Testimony." Testimony that a
2  horse sometimes did and sometimes did not evince fright under
named circumstances does not require the court to receive testimony
in rebuttal, to the effect that, long after the occurrence in question,
the horse did not show fright under circumstances similar to those
in question.

*Appeal from Johnson District Court.*—R. G. POPHAM, Judge.

MARCH 15, 1921.

REHEARING DENIED OCTOBER 1, 1921.

ACTION for damages growing out of a collision between a
horse and buggy driven by the plaintiff, and an automobile
driven by the defendant Olive Yetter. The jury returned a
verdict in favor of the plaintiff, and the defendants appeal.—
*Affirmed.*

*Bailey & Murphy,* for appellants.

*Hart & Hart,* for appellee.

FAVILLE, J.—I. Burlington Street in Iowa City is a street
running east and west, with a street car track located at about
the center of said street. This street is intersected by Dodge
Street, which runs north and south, and has
no street car track. Both of said streets are
paved with bitulithic paving. Both streets
are lined with trees. Burlington Street is 36
feet wide between the curb lines, and Dodge Street is 30 feet

1. HIGHWAYS:
law of road:
failure to
pass beyond
intersection.

wide between the curb lines. The accident out of which this action arose, occurred on the night of May 10, 1919, at about midnight. The appellee lives about 2½ miles southeast of Iowa City, and is a truck gardener. On the night in question, he had been to Iowa City, and was going home, accompanied by his wife. He was driving one horse, hitched to a single buggy. He was driving east on Burlington Street, south of the center of the street, approaching the intersection with Dodge Street. At this time, the appellant Olive Yetter was driving an automobile westward, on the north side of Burlington Street, approaching Dodge Street. She was an experienced driver, and was going about 12 to 15 miles an hour. When the automobile reached the intersection of Burlington Street and Dodge Street, the car was turned to the south, for the purpose of passing southward on Dodge Street. At that time, the horse and buggy of the appellee were in the intersection of the two streets. A collision occurred between the two vehicles. The appellee claims that the horse and buggy were damaged by said collision, and that his wife suffered physical injuries as the result thereof. The claim of the wife was assigned to the appellee, and this action was brought for the damages claimed by appellee as the result of said injuries. The car in question was owned by the appellant Ida Belle Yetter, who is the mother of the appellant Olive Yetter, who was driving the car. A counterclaim was filed for damages resulting to appellant's car as the result of the collision. At the close of appellee's evidence, the appellants moved for a directed verdict, which motion was overruled. The jury returned a verdict in favor of the appellee for $550, and judgment was rendered thereon. The appellant Ida Belle Yetter admitted that, if plaintiff was entitled to any damages, the said Ida Belle Yetter was liable therefor. For convenience, we will refer to the said Olive Yetter as though she were the sole appellant.

The main contention of the appellant in this court is to the effect that the trial court should have sustained the appellant's motion for a directed verdict, on the ground that the evidence fails to show that the appellant was guilty of negligence which was the proximate cause of the injury. It is the appellant's contention that the appellee was guilty of negligence in the man-

agement of his horse at the time of the collision; that the appellee, at or about the instant of the collision, dropped the lines; and that the horse driven by the appellee reared into the air, and came down upon the hood of the automobile; and that the condition of the automobile conclusively demonstrates that the accident happened in said manner. The appellee contends that he was driving on the south side of Burlington Street, and that he saw the lights of the car coming west on the opposite side of the street. It is his contention that he had passed the center of the intersection of the two streets to the eastward, and was about five feet from the southeast corner of the intersection, and that the car was almost opposite him to the north, when it suddenly turned south and ran into him; that, after the accident, the car was faced southwest, with the left hind wheel upon the curb. He says that, when he saw the car turn, he tried to pull up the horse, and shouted ''Whoa,'' just an instant before the collision; that the horse was knocked down by the momentum of the car, and carried a few feet into Dodge Street; and that the horse was lying with his head to the south, back toward the west, and that his feet seemed to be under the automobile, so that he could not get up. The testimony of appellee's wife was substantially to the same effect.

The appellant was driving the car, at the time of the accident, and three other young people were with her in the car, which was a two-seated car, with a left-hand drive. She testifies that, as she came west on Burlington Street to Dodge Street, she turned south, in order to go down Dodge Street, and that she was at about the center of the intersection, and not east of it; that she had lights on the car; that she first saw the appellee's horse and buggy when she turned south on Dodge Street; that, as soon as she saw the horse and buggy, she turned sharply to the left, and applied the brakes, and the left front wheel went over the curb at the southeast corner of the intersection; that the horse was not under the car; but that, when the car stopped, the horse was on top of the car, with his right front leg fastened near the headlight. Other occupants of the car testify to substantially the same effect, and say that the horse came down on top of the car with his front feet, and that one foot was caught between the fender and the headlight. The

evidence shows that one headlight was broken, the rear end of the right fender smashed in, and the hood dented on the right side, near the center.

Appellant strongly urges that the testimony of appellant's witnesses and the physical condition of the car demonstrate to a certainty that the accident could not have occurred as claimed by the appellee. Appellant argues that the injury was caused by appellee, dropping the lines, and that he negligently permitted the horse to rear into the air and come down upon the hood of appellant's car.

Even if it be true that the physical condition of the automobile demonstrates that, during the accident, the horse struck the hood of the automobile, or that the horse was caught on the car between the fender and the headlight, as claimed by the appellant, and that the horse was not under the car, as claimed by the appellee, these facts, if so found by the jury, would not necessarily "conclusively establish" that the appellant was free from negligence, as claimed by counsel, or that the appellee was guilty of negligence which caused the injury. Under the evidence, the jury may well have found that the appellant, in turning to the left from Burlington Street into Dodge Street, did not pass to the right of and beyond the center of Dodge Street before turning, as required by Section 1571-m18, Paragraph 4, of the Supplement to the Code, 1913, then in force. The appellant testified that, when she turned south, she was in the center of the intersection of the two streets. The appellee testified that he was about five feet from the southeast corner of the intersection when the appellant's car turned south.

If the jury believed the testimony of the appellee in this respect, and if the appellant, in driving the car, had observed the statute, and had driven to the right of and beyond the center of Dodge Street before turning south, the street being 30 feet in width, the car would evidently have passed close to the rear of the buggy, instead of in front of the horse. The fact that the appellant's car was turned to the left, and ran on the curb at the southeast corner of the intersection, might have been regarded by the jury as corroborative of the appellee's claim that he was east of the center of Dodge Street at the time the appellant's car turned south. The jury might well have

found, under the evidence, that the horse reared in the air and came down upon the hood of the car; but this would not be "conclusive" of the fact that the appellant was free from negligence, nor would such fact, if established, be determinative of negligence on the part of the appellee in driving the horse.

The parties were very close together at the instant that the appellant turned her car south on Dodge Street. The lights flashed upon the horse and buggy. It would not be conclusive evidence of negligence on the part of the driver of the horse, even if it be true, as claimed by the appellant, that, under these circumstances, the horse plunged into the air, and came down upon the hood of the automobile. It is the appellant's contention that the appellee dropped the lines with which he was driving the horse, and allowed the horse to run into the automobile. The appellee, on the other hand, testified that he tried to pull up the horse, shouted "Whoa," and pulled on the lines; and he is corroborated in this by the testimony of his wife. The whole situation was fully described by witnesses for both appellant and appellee, supporting the respective claims of the parties. It was essentially a question for the jury to determine whether the appellee was free from negligence in the management of his horse, and whether the appellant, in turning the car at the place and in the manner she did, was guilty of negligence.

We have not attempted a review of all of the evidence,—to do so would serve no good purpose. The matter was submitted to the jury under proper instructions. The finding of the jury on the fact question is conclusive and binding upon us, and the court did not err in refusing to direct a verdict for the appellant. *Kimbro v. Moles*, 175 Iowa 528.

II. Error is predicated upon the action of the court in sustaining a motion to withdraw the testimony of the witnesses Murphy and Clifford and Elbert Eden. The evidence of these

2. EVIDENCE: competency: "similar testimony."

witnesses was to the effect that, in December, 1919, they were driving in an automobile in the forenoon, and met the appellee and his wife in a rig on a street in Iowa City, driving the same horse that they were driving on the night of the accident; that the car passed the horse, and that the horse's head was within about two feet

of the car, and the horse did not show any evidence of fright.

The motion to withdraw the testimony was on the ground that it was incompetent, irrelevant, and immaterial, and not proper rebuttal. It is appellant's contention that this was proper rebuttal testimony, because it tended to dispute the testimony of the appellee in regard to the conduct of the horse after the accident. The appellee testified, on cross-examination:

"At this time, in driving along the highway he frequently bolts. In town, I sometimes drive him close to automobiles without him showing fear. * * * If he met a car, he might bolt and might not. I would say you could not drive him within a couple of feet of a moving car without him showing fear. If you drove him within a couple of feet of a moving car, he would not always bolt. In town, and car was going slow, he don't notice them so much; but on a country road, if you drove him within a couple of feet of a car, he would be pretty liable to bolt."

We do not think there was any reversible error in striking the testimony of these witnesses. The fact that they met the appellee's horse on the street in the city, and passed him with a car within two feet, and did not observe any evidence of fright on the part of the horse, did not fairly rebut the testimony of the appellee. The appellee said:

"In town, I sometimes drive him close to automobiles without him showing fear."

We cannot reverse because the testimony of these witnesses was withdrawn from the jury.

III. Error is claimed in the refusal of the court to withdraw the appellee's claim for injury to his wife. The appellant offered the testimony of a physician who had never attended the appellee's wife, but who, answering a hypothetical question, testified that the physical conditions described by the appellee's wife might be due to natural causes. This testimony was properly admitted, but was not conclusive on the question. The appellee's wife testified regarding her condition of health before the injury and afterward. Extensive arguments are presented to us on the question of whether or not appellee's wife was injured, and the extent of such injuries, if any, and whether or not the conditions of which she complains were caused by the

accident or are the result of natural conditions, or of imagination, or of malingering. We cannot pass upon these disputed questions of fact. The finding of the jury has substantial support in the evidence, and we cannot interfere.

IV. It is argued that the verdict is not sustained by sufficient evidence; that the same is contrary to law, and is the result of passion and prejudice. We have not attempted to set out all of the evidence in the case, although we have examined the record with care. It was clearly a fact question, both as to the negligence of the appellee and the negligence of the appellant. There was evidence of damage to the appellee's horse and to the buggy, and of injury to the appellee's wife. The size of the verdict is not such as to indicate passion and prejudice on the part of the jury. The cause was carefully submitted to the jury upon instructions of which no complaint is made. We find no reversible error in the record, and the judgment of the lower court must be, and is,—*Affirmed*.

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.