Knaus Truck Lines, Inc., Appellant, v. Commercial Freight Lines et al., Appellees.

Merchants Motor Freight, Inc., Appellant, v. Commercial Freight Lines et al., Appellees.

No. 47077.

OCTOBER 14, 1947.

REHEARING DENIED DECEMBER 19, 1947.

Bump & Bump, of Des Moines, for appellants.

Stipp, Perry, Bannister, Carpenter & Ahlers, of Des Moines, for Commercial Freight Lines, appellee.

Abramson & Myers, of Des Moines, for Aaron Mason, appellee.

GARFIELD, J.—Four trucks were directly involved in the collision from which these actions arose. They belonged to the two plaintiffs, Knaus Truck Lines and Merchants Motor Freight, and the two defendants, Commercial Freight Lines and Aaron Mason. A fifth truck, driven by Jensen, was parked at the scene of the collision but was not directly involved. All but the Mason truck, which was "straight," were of the tractor-trailer or semi-trailer type. At the time of the collision all the trucks were stopped except that of plaintiff Merchants Motor Freight.

The collision occurred in January, on paved U. S. High-way 6, about six miles east of West Liberty near the lower east end of a hill. Some seven hundred feet to the east the highway forms an elevated crossing over a railroad. As the highway leaves the overpass going west it curves to the left, then to the right up the hill at the bottom of which the collision occurred. Between the west approach to the overpass and the hill to the west the paving is level.

The collision occurred between 7:15 and 7:30 a.m. The road was icy and slippery and there was a heavy fog, mist, and freezing rain. Defendant Mason, going west, first arrived at the bottom of the hill. He thought it was too icy to continue and attempted to turn around and go back to the next town east. In the attempt Mason's truck was moved across the paving "and he could not get away." The rear of the truck was south of the center line, the front wheels on the north shoulder. It is not shown how long the Mason truck remained in this position across the highway.

Plaintiff Knaus' truck, driven by Wilcoxon, was next to arrive, also from the east. He pulled out to his right and stopped east of the Mason truck on the north shoulder except that the left dual wheels occupied the north one foot of the

paving. Defendant Commercial Freight Lines' truck, driven by Norgor, also going west, followed the Knaus truck by about a half minute. Norgor stopped the Commercial unit almost directly south of defendant Mason's truck. Half the Commercial truck was on the paving, half on the south shoulder. There was a four- to five-foot space between the rear of the Mason truck, headed north across the highway, and the Commercial truck, headed west south of the Mason truck. About a half minute later Jensen arrived from the west, traveling down the hill. He succeeded in getting his truck onto the north shoulder and stopped, headed east, fifteen to twenty-five feet west of Mason.

Merchants Motor Freight's truck, driven by Merrifield, followed the Jensen truck at another half-minute interval. Like Jensen, he was traveling east down the hill. Merrifield was unable to stop the Merchants truck and headed for the four- to five-foot opening between the trucks of the two defendants. The opening was too narrow and he collided with the Mason truck and grazed the north side of the Commercial truck. The collision knocked the wheels of the Merchants' tractor out of line and sent it out of control so that it struck plaintiff Knaus' truck which was one hundred to one hundred twenty-five feet east of Mason, mostly on the shoulder.

Both Knaus and Merchants sued Commercial and Mason for the damage to their trucks, alleging defendants were negligent in stopping on the highway and failing to warn oncoming traffic of their presence. The two actions were consolidated. At the close of plaintiffs' evidence the trial court directed verdicts for defendants against each plaintiff on the ground that each, through its driver, "was guilty of contributory negligence as a matter of law." From judgment on the verdict plaintiffs have appealed.

Of course, it is our duty to view the evidence in the light most favorable to plaintiffs and give them the benefit of all permissible inferences. When this is done, we think reasonable minds might reach different conclusions upon the issue of plaintiffs' freedom from contributory negligence and therefore it should have been submitted to the jury.

■ I. Defendants contend Merrifield, plaintiff Merchants' driver, was contributorily negligent as a matter of law in

violating the prohibition of Code section 321.285 (all Code references are to the Code of 1946) against driving at a speed greater than will permit stopping within the assured clear distance ahead, "such driver having the right to assume, however, that all persons using'said highway will observe the law." The quoted words are an amendment which took effect July 4, 1935.

We have frequently held this statute is not a hard and fast rule applicable in every case where a motorist collides with a stationary object. Many of our cases recognize there may be a legal excuse for violating the statute or that peculiar or diverting circumstances may render the statute inapplicable. Schroeder v. Kindschuh, 229 Iowa 590, 593, 294 N. W. 784, and cases cited; Angell v. Hutchcroft, 231 Iowa 1057, 1061, 3 N. W. 2d 147, 149; Central States Elec. Co. v. McVay, 232 Iowa 469, 473, 5 N. W. 2d 817, 819.

Under section 321.285 Merrifield had a right to assume, until he knew or should have known otherwise, there would be no illegal obstructions upon the highway. The jury could properly find here that both defendants' trucks were illegally parked upon the paving in violation of section 321.354. See Smith v. Pust, 232 Iowa 1194, 1197, 6 N. W. 2d 315, 317; Uhlenhopp v. Steege, 233 Iowa 368, 373, 7 N. W. 2d 195, 198. Also that Commercial's truck was stopped in violation of section 321.358 (10), (11).

When Merrifield discovered the Jensen truck he was some four hundred feet or perhaps more to the west, coming over the top of the lower part of the hill with a grade of about six per cent. The hill then flattens out to the west or forms "a little valley" and then there is a second rise to the west on a grade of about two per cent. Merrifield was not exceeding twenty-five to thirty miles per hour when he saw the Jensen truck. He was traveling in the third of five forward speeds. "It is unable to run over thirty miles an hour, and very seldom over twenty-five or twenty-six miles in third gear. The governor cuts off about then." Although Jensen was completely off the paving, Merrifield "realized that there must have been some trouble, a flat tire or something, and I tried to slow down." As he came closer, descending this ice-covered, six per cent

grade, Merrifield discovered the Mason truck "crossways" and then the Commercial truck on his side of the road facing him.

The jury could properly find Merrifield discovered defendants' trucks as soon as they were reasonably discernible in the exercise of ordinary care. We cannot say the speed he was then traveling was, as a matter of law, excessive. Reasonable minds might fairly conclude not only that Merrifield, from the time he discovered defendants' trucks, exercised ordinary care in an attempt to avoid the collision but did everything possible toward that end.

Wilcoxon (Knaus' driver), Jensen, and Merrifield (who had not worked for Merchants for several years before the trial), all experienced truck drivers, substantially agree it was impossible to stop a truck on the pavement of this icy hill and the only chance of stopping was to get off on the shoulder where traction was possible. The jury could find Merrifield made every effort to get onto the shoulder but was unable to do so because of the six-inch curb at the edge of the paving and the fact his truck was practically empty.

Merrifield in descending the hill operated the Merchants' truck in about the same way Jensen operated his truck as he descended the hill and as Wilcoxon and Norgor operated their trucks in descending the icy six per cent grade just west of the railroad overpass. It would be proper to find that Jensen was able to get onto the north shoulder (to his left) because his truck was loaded and that the seven-hundred-foot level stretch of road enabled Wilcoxon and Norgor to come to a stop near the foot of the hill.

We quote these excerpts from defendants' cross-examination of Jensen, a disinterested witness:

"When I saw this situation my heart came up into my mouth. I didn't know what to do but I tried to stop. I felt my trailer start to slip sideways and I used my brakes to hit the shoulder, either one side or the other, first north and then south. * * * As soon as I saw them I did everything I could to try to stop and because of the slippery pavement I could not get over on the shoulder on the south side of the road. I was trying to get off the pavement either on the north side or

the south side and I managed to jump the flange on the north side and got out on the shoulder where I got a little traction and was able to stop. It was a bad situation there due to the weather and the presence of trucks on the highway. \* \* \* I saw the Merchants come over the hill from the west, something like 30 miles per hour, and the Merchants truck began to slide from one side of the road to the other trying to stop. \* \* \* The Merchants truck jackknifed some coming down the hill, just about as I was until I had got mine over the edge of the pavement. I talked with the Merchants driver after the accident. He asked me how I got stopped. I said 'I was lucky.' He said, 'What else could I do?' I said 'You could not do anything.' ''

Merrifield himself testified:

''The first thing I did was to try to stop and I saw I could not stop because of the ice and I had to do just the best thing I could and that was to get straightened out and take the closest way through, that is this four-foot hole. With the load I was carrying I could not get on the shoulder at all because of the rib on the edge of the road. I tried both sides of the highway to get my truck off by maneuvering back and forth trying to jump the curb. \* \* \* It is pretty hard to say about how close I was to [defendants' trucks] when I decided to go between them. \* \* \* But I would judge 50 feet \* \* \*. If I had continued on the way I was I would have just upset the whole bunch of them instead of nosing my way through.''

We have held that where a motorist while in the exercise of ordinary care unexpectedly comes upon a vehicle of which he is not aware and which is not lighted as required by law and thereafter exercises such care in an attempt to avoid striking the vehicle, he is not negligent as a matter of law in colliding with the obstruction, but the presence of the unlighted vehicle in violation of law furnishes the motorist a legal excuse. Central States Elec. Co. v. McVay, 232 Iowa 469, 473, 5 N. W. 2d 817, 820.

We have held this same doctrine is applicable where the collision is with a vehicle parked in violation of what is now section 321.354. Uhlenhopp v. Steege, 233 Iowa 368, 373, 7 N. W. 2d 195, 198. Also to other collisions with vehicles occupying a portion of the highway in violation of law. Harrington v. Fortman, 233 Iowa 92, 102, 8 N. W. 2d 713, 718; Semler v. Oertwig, 234 Iowa 233, 255, 12 N. W. 2d 265, 276. These authorities have direct application here.

Young v. Hendricks, 226 Iowa 211, 283 N. W. 895, and Albrecht v. Waterloo Constr. Co., 218 Iowa 1205, 257 N. W. 183, upon which defendants rely, are plainly to be distinguished upon their facts from the instant case. Further, the Albrecht case arose prior to the 1935 amendment to the assured-clear-distance statute (section 321.285) and when no statute such as section 321.354 (passed in 1937) prohibited motorists from stopping on a paved highway outside of a business or residence district.

II. Defendants' argument that Wilcoxon, Knaus' driver, was guilty of contributory negligence as a matter of law is much less persuasive than the contention we have rejected in the preceding division. Wilcoxon may have been negligent in leaving his left dual wheels upon the north one foot of the pavement, but it cannot be said as a matter of law this act contributed directly to cause the collision with the Merchants truck. The jury could properly find the Knaus truck would have been damaged to the same extent if it had been entirely off the pavement. See Lawson v. Fordyce, 234 Iowa 632, 644, 12 N. W. 2d 301, 307, and cases cited.

It is claimed Wilcoxon was negligent in not placing a lighted fusee and lighted flares on the roadway as required by section 321.448. But it appears the collision did not occur at a time "when lighted lamps must be displayed" and the statute is therefore not applicable.

The jury might find Wilcoxon negligent in failing to give some other warning of the presence of his truck, or in some other respect, but it is clear the issue of his freedom from contributory negligence was for the jury and not for the court.

III. Although the verdict was directed solely on the

ground of contributory negligence, defendants, especially Mason, seek to uphold the ruling on the ground their negligence was not shown. It is also contended Merrifield, Merchants' driver, was guilty of negligence which was the sole intervening cause of the damage to Knaus' truck. Since these other grounds were urged below in support of the motions to direct, defendants are entitled to advance them here in defense of the ruling. Humphrey v. City of Des Moines, 236 Iowa 800, 803, 20 N. W. 2d 25, 26; Wentland v. Stewart, 236 Iowa 258, 261, 18 N. W. 2d 305, 306, and cases cited.

We have held in Division I the jury could properly find defendants' trucks were stopped in violation of section 321.354 and the Commercial truck in violation of section 321.358 (10), (11). There was ample room for parking the Commercial truck on the north shoulder in the one hundred to one hundred twenty-five feet between the Knaus and Mason trucks. The other ground of negligence charged by plaintiffs against defendants is failure to place flares as required by section 321.448. We have held in Division II this statute is not applicable because of the time the collision occurred.

■■ As to defendant Commercial, plaintiffs alleged it was negligent in obstructing traffic without placing flares *or other signs* to warn oncoming traffic. Although the words we have italicized are not entirely clear, we think they sufficiently charge negligence of Commercial in failing to give some warning sign other than flares and that the jury might find there was such negligence. Even though the statute requiring the placing of flares is not applicable, it may be the Commercial's driver, in the exercise of ordinary care under the peculiar circumstances shown, should have given some other warning sign of the obstruction on the pavement. The question was for the jury. As bearing on this, see Johnson v. Overland Transp. Co., 227 Iowa 487, 495, 288 N. W. 601.

■■ Compliance with statutes is not all the law requires of a motorist. Statutes prescribe only the minimum of prudent conduct. All motorists are also required to exercise the care of the ordinarily prudent person under the circumstances. Langner v. Caviness, 238 Iowa 774, 779, 28 N. W. 2d 421, 424.

We conclude the trial court's ruling cannot be sustained on the ground there was no evidence of defendants' negligence.

■ IV. Nor do we think defendants were entitled to a directed verdict against Knaus on the ground that Merrifield's claimed negligence, as a matter of law, was an independent intervening cause which was solely responsible for the collision between Knaus and Merchants. We assume, without deciding, defendants were entitled to raise this issue without pleading it. (Their answers were in effect general denials.) It is well settled that where a third party's subsequent act, whether negligent or not, is relied upon as an independent intervening cause it will not have that effect if it or a similar act might reasonably have been foreseen. Webber v. Larimer Hdwe. Co., 234 Iowa 1381, 1387, 15 N. W. 2d 286, 289, and authorities cited.

■ The jury could find defendants' drivers might reasonably have anticipated the inability of some driver to bring his truck to a stop before reaching the bottom of the hill. There is direct evidence that Norgor, Commercial's driver, in descending the approach to the overpass, had difficulty similar to that experienced by Merrifield. And it is fairly to be inferred Mason had experience similar to that of Norgor. That this issue, if it was such, was for the jury, not for the court, see Blessing v. Welding, 226 Iowa 1178, 1182–1185, 286 N. W. 436, and authorities cited; Johnson v. Overland Transp. Co., 227 Iowa 487, 498, 288 N. W. 601.

■ V. Plaintiffs assign error upon the rejection of evidence of the profits made by Merchants from the use of one of their tractor-trailers during the time the damaged unit was being repaired. We approve the ruling. If either plaintiff was entitled to recover, the measure of recovery as pleaded was the reasonable cost of repair plus the reasonable value of the use of the vehicle while being repaired with ordinary diligence, not exceeding the value of the vehicle before the injury. Langham v. Chicago, R. I. & P. R. Co., 201 Iowa 897, 901, 208 N. W. 356, 358; Kohl v. Arp, 236 Iowa 31, 33, 17 N. W. 2d 824, 826; Langner v. Caviness, 238 Iowa 774, 781, 28 N. W. 2d 421, 425.

It is to be inferred from the testimony it is common for truckers to rent such units as plaintiffs' and they have a recognized rental value. Mr. Knaus testified to such value. Merchants made no attempt to show it could not have rented a unit similar to the damaged one during the time it was undergoing repair. The fair inference is to the contrary. Merchants' loss from being deprived of the use of the truck for repairs is more accurately and fairly shown by the rental value of a similar vehicle than by loss of profits during such period.

We hold, therefore, that evidence of rental value was proper and evidence as to profits from the use of the trucks was rightly rejected. Kohl v. Arp, 236 Iowa 31, 39, 40, 17 N. W. 2d 824, 828, 829; 5 Am. Jur., Automobiles, sections 750, 751; 25 C. J. S., Damages, section 83c; annotations 4 A. L. R. 1350, 1355, 1359; 32 A. L. R. 706; 78 A. L. R. 910, 912, 913.

VI. Plaintiffs assign error upon the striking, as an incompetent conclusion and opinion, of a statement by their witness Wilcoxon, Knaus' driver, that Merrifield ''used good driving judgment'' in attempting to drive through the opening between the Mason and Commercial trucks.

The receipt of opinion evidence, lay or expert, rests largely in the trial court's discretion. We are loath to interfere with the exercise of such discretion unless there is manifest abuse thereof. Grismore v. Consolidated Products Co., 232 Iowa 328, 342, 5 N. W. 2d 646, 654, and authorities cited. We are inclined to hold there was no abuse of discretion here.

It is generally agreed direct testimony as to whether a motorist at the time of an accident was careful or otherwise, negligent or not negligent, is inadmissible. It is not the subject of opinion testimony. While the statement stricken here is perhaps not direct testimony Merrifield was careful, it seems to us it is indirect testimony to this effect. See annotation 66 A. L. R. 1117; Grismore case, supra (232 Iowa 328, 361, 5 N. W. 2d 646, 663); Reed v. Edison Elec. Illum. Co., 225 Mass. 163, 114 N. E. 289, 291; Kist v. Kist, 62 N. D. 408, 243 N. W. 820. See, also, Vandell v. Roewe, 232 Iowa 896, 898, 6 N. W. 2d 295, 296.

VII. Plaintiffs asked their witness Wilcoxon, "Q. Based upon your judgment or judging from your experience as a truck driver, and traveling that kind of a highway, what course would you say * * * the Merchants Transfer Company took or could take after they saw this highway blocked?" Plaintiffs complain of the sustaining of defendants'. objection that the question called for an incompetent opinion and conclusion, not a proper subject of expert testimony. We might dismiss this contention on the ground there was no offer of proof and no showing what the answer would have been. In re Estate of Heller, 233 Iowa 1356, 1362, 11 N. W. 2d 586, 590, and cases cited; Vandell v. Roewe, 232 Iowa 896, 898, 6 N. W. 2d 295, 296. However, we are inclined to hold the ruling was not an abuse of discretion.

Of course, it was proper for plaintiffs to show what course the Merchants truck in fact took. Insofar as the question called for this fact the matter was fully covered by testimony of Wilcoxon and other witnesses and the ruling was without prejudice. The cases disagree as to whether a witness may testify whether there was anything a driver could or should have done that he did not do to avoid an accident. 5 Am. Jur., Automobiles, section 650; annotation 66 A. L. R. 1117, 1119.. Insofar as the question here called for an opinion as to what course the Merchants could take, we have held similar questions objectionable. Allen v. Des Moines R. Co., 218 Iowa 286, 291, 253 N. W. 143; Bruggeman v. Illinois Cent. R. Co., 147 Iowa 187, 196, 123 N. W. 1007, Ann. Cas. 1912B, 876. See, also, Patterson v. Jacobs, 289 Mich. 351, 286 N. W. 643, 645.—Reversed.

OLIVER, C. J., and BLISS, HALE, SMITH, MANTZ, MULRONEY, and HAYS, JJ., concur.